# EXHIBIT A

Electronically Filed - Buchanan - April 19, 2022 - 03:12 PM

**IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**

| | |
|---|---|
| **BETTY LEIVAN,** ) | |
| 617 Prather Avenue ) | |
| Maryville, Missouri 64468, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| **BASF CORPORATION,** ) | Division: |
| (Serve Registered Agent: ) | |
| CT Corporation System ) | |
| 120 South Central Avenue ) | |
| Clayton, MO 63105), ) | |
| ) | |
| Defendant. ) | |

**PETITION FOR DAMAGES**
**(TJ)**

Plaintiff Betty Leivan states the following as her causes of action against Defendant BASF Corporation.

1.      Plaintiff Betty Leivan (Plaintiff) is a female resident of Maryville, Nodaway County, Missouri.

2.      Defendant BASF Corporation (Defendant) is a foreign corporation organized under the laws of Delaware that is registered to conduct business in the State of Missouri and transacts business in St. Joseph, Buchanan County, Missouri.

3.      Defendant is an employer as defined by, and within the meaning of, the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010(7).

4.      Defendant is an employer as defined by, and within the meaning of, Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

5.      Plaintiff asserts these claims pursuant to § 213.010, et seq. of the MHRA and Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

1

6.      Venue is proper because the events giving rise to Plaintiff's claims occurred in St. Joseph, Buchanan County, Missouri.

7.      Plaintiff timely filed a Charge of Discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) alleging Defendant engaged in discriminatory actions that are being raised in this lawsuit or, alternatively, alleged conduct within the scope of the administrative investigation which could reasonably be expected to grow out of the Charges of Discrimination.

8.      The MCHR and the EEOC issued Plaintiff Notices of Right to Sue and this action is being brought within ninety (90) days from the issuance of such Notices of Right to Sue.

9.      Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

## ALLEGATIONS COMMON TO ALL COUNTS

10.     Plaintiff began working for Defendant in St. Joseph, Missouri in August 2016.

11.     At the time Plaintiff was hired, her supervisor was a male employee named Manuel Hechenblaicker (Hechenblaicker).

12.     In October 2016, Plaintiff legally married another woman.

13.     As a female attracted to another female, Plaintiff did not conform to stereotypes as to how men and women should behave, including, but not limited to, not conforming to the stereotype and/or belief that a woman should be attracted to a person of the opposite sex, not wearing makeup or dressing in conformity with traditional beliefs as to how women should look and/or dress; and not wearing her hair in a traditionally female hairstyle, but rather in a style traditionally worn by men with the back and sides of her hair shaved.

14.     Plaintiff did not hide her sexual orientation at work and her co-workers and managers were aware she was in a same-sex relationship and now in a same-sex marriage.

15.     In or around January 2017, a male co-worker named Rocky McGeorge (McGeorge) yelled and cursed at Plaintiff and called her a "bitch" and a "cunt."

16.     Plaintiff reported Rocky's behavior to Hechenblaicker.

17.     In or around 2018, a male named Jim Phillabaum (Phillabaum) became the Site Manager.

18.     After Hechenblaicker left the company, Phillabaum became Plaintiff's new direct supervisor for a short period of time.

19.     After his promotion, Phillabaum asked Plaintiff if it was okay if he told Octovio Soares, the Global Head of Seed Supply at BASF, that Plaintiff would represent the site for diversity and inclusion and for ALLChemie, an employee group of BASF.

20.     Plaintiff asked him why, and he told her that "stuff" like this "fit her lifestyle."

21.     Throughout Plaintiff's employment, Phillabaum also made a point of asking Plaintiff about her wife during a majority of their conversations.

22.     Plaintiff noticed that Phillabaum did not ask heterosexual employees about their spouses.

23.     In 2018, while Phillabaum was Plaintiff's direct supervisor, McGeorge again began yelling and screaming at Plaintiff, and he called her a "dyke" in the lobby at work near the fermentation area.

24.     Another female employee named Krista Schneider, who was working upstairs at the time, told Plaintiff she could hear McGeorge yelling and wondered what was going on.

25.     Plaintiff reported McGeorge's behavior to Phillabaum, including reporting to him that McGeorge had called her a "dyke."

26.     Phillabaum told Plaintiff he would talk to McGeorge and try to figure out what happened.

27.     Phillabaum also told Plaintiff that sometimes McGeorge just acts that way.

28.     In or around June or July 2018, a male named Scott Chaney (Chaney) was hired as a Production Manager, and he became Plaintiff's direct supervisor.

29.     After Plaintiff's report to Phillabaum about McGeorge's inappropriate and unwelcome behavior towards her, McGeorge continued, on no less than five different occasions, in 2018 to yell at Plaintiff and call her names, including calling her a "bitch," "cunt," "fucking bitch," and "fucking cunt."

30.     Plaintiff reported McGeorge's comments and behavior to Chaney.

31.     McGeorge's offensive behavior continued even after Plaintiff's reports to management.

32.     In 2019, McGeorge called Plaintiff a "dyke" or a "fucking dyke" on approximately seven to eight different occasions.

33.     In August 2019, after her complaints, Plaintiff received two "Written Warnings," one for allegedly failing to comply with "site standard production practices" and the other for allegedly violating the "company's policy on Sexual and Other Harassment, violation of Code of Conduct expectations and site expectations" for "using intimidation and profanity to elicit another employee to do a task for [Plaintiff]."

4

34. Plaintiff questioned management as to why she was written up for allegedly using one cuss word, whereas McGeorge was not disciplined for directing offensive, discriminatory/harassing language at her.

35. Defendant's management did not provide her with an answer or an explanation.

36. Plaintiff later learned that one of her female co-workers, Kaylee Larabee (Larabee), felt pressured by management to make a statement against Plaintiff in order to keep her job, even though Larabee did not want to get Plaintiff in trouble.

37. Larabee also told Plaintiff that she understood that it was members of management that wanted her fired.

38. Plaintiff had heard this from other employees as well.

39. After Plaintiff was written up for allegedly violating the company's sexual and other harassment policy, she continued to report McGeorge's behavior and offensive name calling to management.

40. After Plaintiff's reports of discrimination/harassment in 2019, she again was written up.

41. Plaintiff received a final written warning on February 14, 2020, for allegedly failing to "comply with standard production practices."

42. The initial written warning Plaintiff received was for behavior that primarily occurred while she was off of work on vacation.

43. When Plaintiff pointed out to Phillabaum that she was off work on vacation from December 21, 2019, to January 7, 2020, Phillabaum instructed Chaney to modify the written warning and broaden the dates on the warning to December 13, 2019, to January 23, 2020.

5

44.     Plaintiff believes this write-up was in retaliation for her reports of discrimination/harassment, as Plaintiff was not present during most of the dates identified on the written warning and since she had repeatedly asked management for process tour paperwork prior to and upon returning from vacation, but they were never provided to her.

45.     Throughout 2020, McGeorge continued to engage in unprofessional behavior and call Plaintiff offensive names, including continuing to call her a "bitch," "cunt," "fucking bitch," and "fucking cunt" on approximately six different occasions.

46.     For instance, in August 2020, McGeorge yelled at Plaintiff over the way she was completing paperwork, and he threw his hardhat across the room.

47.     As another example, in October 2020, in front of both Chaney and Production Supervisor Brian Brown (Brown), McGeorge started yelling that his opinion was not being considered and he felt unimportant, and he then called Plaintiff a "dyke."

48.     In response, Chaney and Brown suggested Plaintiff ask McGeorge questions and find ways to include him in the computer work she was doing.

49.     That next month, in November 2020, McGeorge again got upset at the way a rebuild was taking place, and he yelled and cursed at Plaintiff, calling her a "cunt" and a "fucking bitch" while he threw wrenches.

50.     Defendant's management did nothing in response to the November 2020 incident.

51.     When Plaintiff reported McGeorge's behavior and comments to Hechenblaicker, Phillabaum, and Chaney, they would tell Plaintiff that McGeorge was just grumpy and in a bad mood or that he was just that way, and Plaintiff needed to get used to it.

52.     Defendant's management would also shift the blame to Plaintiff and ask her what she had done to upset McGeorge or ask Plaintiff whether it was her fault that he got upset.

53.     On occasion, Defendant's management would tell Plaintiff they would look into it, but Plaintiff is not aware of any investigation that was ever conducted or any action they took in response to her reports, and McGeorge's conduct just continued.

54.     In or around August 2020, Plaintiff was one of three individuals selected to help develop APN 4.0, a development database for information tracking for the fermentation department.

55.     Defendant's St. Joseph, Missouri facility was the trial site for this database development that would go company wide.

56.     The prior year, Plaintiff was one of only five or six individuals selected to be an ISO (International Organization for Standardization) auditor.

57.     Additionally, from 2018 to 2020, Plaintiff was given the tasks of rewriting and developing competency tests for all standard operating procedures (SOP) for the fermentation area and some SOP's for the entire plant and redoing all forms and assisting in the development of training criteria for the fermentation area.

58.     Additionally, during her employment with Defendant, Plaintiff wrote new procedures for process changes and/or equipment to include the training of other employees, and she developed training criteria for new broiler operators and competency training.

59.     Plaintiff does not believe she would have been assigned to these tasks and/or roles if her work performance was ever at issue.

60.     In mid-March 2021 (Plaintiff believes sometime during the week of March 15, 2021), McGeorge again got upset with her over trash can lids, and he told Plaintiff that he wasn't letting "some fucking dyke" change things anymore.

7

61.     Brown witnessed McGeorge's conduct and language towards Plaintiff on this occasions.

62.     Plaintiff told Brown that she was one hundred percent done with being treated this way by McGeorge and that she had done nothing to deserve the treatment.

63.     Brown told Plaintiff that she just needed to try and get along with McGeorge.

64.     Plaintiff told Brown she did not deserve to be treated this way, and she was finished with management failing to take action to stop McGeorge's behavior towards her.

65.     Plaintiff told Brown that if management did not take action to stop McGeorge's comments/actions towards her that the next person she would be talking to was someone who was not at the site.

66.     In early April 2021, Chaney asked Plaintiff what was on her work boots.

67.     Plaintiff told Chaney that she wasn't sure.

68.     Chaney told Plaintiff to clean her boots, and Plaintiff complied with his directive.

69.     In hindsight, Plaintiff believes the residue on her boots may have been from when she cleaned the mix tank on or about April 1, 2021, with a cleaner called Bar Keepers Friend, which can leave a chalky white residue.

70.     On or about April 13, 2021, just a few weeks after Brown witnessed McGeorge's harassment of Plaintiff and Plaintiff told Brown that she was done with McGeorge treating her this way, Brown and Chaney questioned Plaintiff about a spill that occurred several weeks earlier.

71.     On or about March 26, 2021, a chemical spill of less than 200mL of sodium hydroxide occurred after Plaintiff took the container that was stored in the mix room to the barrel for refilling.

72.     When Plaintiff started to turn the container to place it in the rack, it started to leak from the nozzle.

73.     Plaintiff quickly turned the container and checked the nozzle.

74.     Plaintiff noted that the nozzle was stuck partly open from the last time it had been used.

75.     Once the container was in the rack, Plaintiff mopped up the spill.

76.     The volume of the spill was not more than what is spilled when they do a CIP (clean in place).

77.     CIP spills are not reportable spills.

78.     The only chemicals Plaintiff is aware of that require the use of a spill kit are hydrogen peroxide and phosphoric acid.

79.     To Plaintiff's knowledge and the knowledge of her co-workers, all other minor spills are cleaned up with a mop and not required to be reported.

80.     When Plaintiff was questioned about the spill, she told Brown and Chaney that she was the only one present for the spill and that McGeorge came in as Plaintiff was mopping.

81.     After Plaintiff explained what happened, Brown confirmed that the nozzle was messed up and that a replacement nozzle needed to be ordered.

82.     During their meeting, Chaney called Plaintiff a "liar" after she gave her explanation of the spill.

83.     Chaney also asked Plaintiff if she wanted to change her story as to what was on her boots.

84.     Plaintiff told Chaney that she had told him the truth that she was not for sure what had been on her boots several weeks ago.

9

85.     At the conclusion of the meeting, Chaney told Plaintiff she was being suspended pending an investigation.

86.     On or about April 15, 2021, Chaney told Plaintiff she was fired.

87.     Brown was also present for Plaintiff's termination.

88.     Plaintiff asked to see any company policy that she was alleged to have violated.

89.     Chaney told Plaintiff that he was not allowed to discuss the investigation or show Plaintiff any documents, including any company policies.

90.     Plaintiff then asked Chaney to confirm that she was being fired for alleged poor job performance for a spill that only Plaintiff saw, that he wasn't allowed to show Plaintiff the policy that she was alleged to have violated, and that Plaintiff was not going to be given a chance to defend herself.

91.     Chaney confirmed that Plaintiff's understanding was correct.

92.     In the past, Chaney and Brown had always been willing to show Plaintiff and/or discuss policies with her.

93.     Additionally, with respect to the written warnings Plaintiff received in the past, Defendant's management told her that the warnings would only stay on her record for 12 months, with the exception of her written warning for allegedly violating the company's harassment policy which was to stay on her record for 18 months, i.e. until February 2021.

94.     However, Plaintiff does not believe her older past written warnings were removed from her work record.

95.     To Plaintiff's knowledge and belief, Defendant did not consult with any human resources personnel prior to discipling Plaintiff, suspending her, and/or terminating her employment.

## <u>COUNT I</u>
## <u>RETALIATION IN VIOLATION OF THE MHRA</u>

96.     Plaintiff incorporates by reference into Count I of Plaintiff's Petition for Damages all allegations contained in all preceding paragraphs herein against Defendant.

97.     Plaintiff engaged in protected activity by, including without limitation, reporting to Defendant her good faith belief and/or reasonable belief that she was being discriminated against because of her sex, female.

98.     Because Plaintiff engaged in the above-referenced protected activity, Defendant retaliated and/or discriminated against Plaintiff, including, but not limited to, issuing written warnings to Plaintiff, suspending her, and terminating her employment in violation of Mo. Rev. Stat. § 213.070.

99.     All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

100.     As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered damages which include past and future lost wages and benefits; a detrimental job record; career damage and diminished career potential; pain and suffering; emotional and mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep; and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

101.     Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, reckless indifference to, or conscious disregard for the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

102.     Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory,

and punitive damages, all costs, expenses, expert witness fees, and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT II
## SEX DISCRIMINATION IN VIOLATION OF THE MHRA

103.    Plaintiff hereby incorporates by reference into Count II of Plaintiff's Petition for Damages all allegations contained in all preceding paragraphs herein against Defendant.

104.    Defendant discriminated against Plaintiff in the terms and conditions of her employment because of her sex, female, including sex stereotyping, in violation of Mo. Rev. Stat. § 213.055.

105.    Defendant subjected Plaintiff to a hostile and offensive work environment based upon her sex, female, as a result of unwelcome comments and actions by McGeorge which constituted a continuing pattern of unwelcome harassment, which Plaintiff found and which a reasonable person would find to be offensive and which altered a term, condition or privilege of her employment.

106.    Plaintiff complained about Defendant's discriminatory actions to Defendant and demanded that the discrimination/harassment cease.

107.    Defendant knew, or should have known, of the illegal sex discrimination/harassment against Plaintiff.

108.    Defendant failed to take prompt and appropriate corrective action to end the discrimination against Plaintiff.

109.    Defendant failed to make good faith efforts to enforce its policies to prevent discrimination against its employees, including Plaintiff.

110.    All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

111.    As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered damages which include past and future lost wages and benefits; a detrimental job record; career damage and diminished career potential; pain and suffering; emotional and mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep; and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

112.    Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, reckless indifference to, or conscious disregard for the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

113.    Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees, and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

<u>**COUNT III**</u>
<u>**RETALIATION IN VIOLATION OF TITLE VII**</u>

114.    Plaintiff hereby incorporates by reference into Count III of Plaintiff's Petition for Damages all allegations contained in all preceding paragraphs herein against Defendant.

115.    Plaintiff engaged in protected activity by, including without limitation, reporting to Defendant her good faith belief and/or reasonable belief that she was being discriminated against because of her sex, female.

116.    Because Plaintiff engaged in the above-referenced protected activity, Defendant

13

retaliated and/or discriminated against Plaintiff and subjected her to adverse employment actions, including, but not limited to, issuing written warnings to Plaintiff, suspending her, and terminating her employment in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e-3(a).

117.    All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

118.    As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered damages which include past and future lost wages and benefits; a detrimental job record; career damage and diminished career potential; pain and suffering; and emotional and mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

119.    Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, reckless indifference to, or conscious disregard for the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

120.    Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees, and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## COUNT IV
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

121.    Plaintiff hereby incorporates by reference into Count IV of Plaintiff's Petition for

14

Damages all allegations contained in all preceding paragraphs herein against Defendant.

122.     Defendant discriminated against Plaintiff in the terms and conditions of her employment because of her sex, female, including her sexual orientation.

123.     Plaintiff's sex, female, including her sexual orientation, was a motivating factor in Defendant's decision to discriminate against her in the terms and conditions of her employment as set forth herein.

124.     Defendant subjected Plaintiff to a hostile and offensive work environment based upon her sex, female, as a result of unwelcome comments and actions by McGeorge which constituted a continuing pattern of unwelcome harassment, which Plaintiff found and which a reasonable person would find to be offensive and which altered a term, condition or privilege of her employment.

125.     Plaintiff complained about Defendant's discriminatory actions to Defendant and demanded that the discrimination/harassment cease.

126.     Defendant knew, or should have known, of the illegal sex discrimination/harassment against Plaintiff and other similarly-situated employees.

127.     Defendant failed to take prompt and appropriate corrective action to end the discrimination against Plaintiff and other similarly-situated employees.

128.     Defendant failed to make good faith efforts to enforce its policies to prevent discrimination against its employees, including Plaintiff.

129.     All actions or inactions of or by Defendant occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

130.     As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered damages which include past and future lost wages and benefits; a detrimental job record;

career damage and diminished career potential; pain and suffering; emotional and mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep; and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

131.    Defendant's conduct was intentional, malicious, and/or outrageous and evidenced an evil motive, reckless indifference to, or conscious disregard for the rights of Plaintiff and others similarly situated, thereby entitling Plaintiff to an award of punitive damages.

132.    Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees, and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all of the allegations contained in this Petition that are triable before a jury.

Respectfully submitted,
**EMPLOYEE & LABOR LAW GROUP**
**OF KANSAS CITY, LLC**

By:     /s/Kristi L. Kingston
         Kristi L. Kingston, Mo. Bar No. 46539
         12920 Metcalf Avenue, Suite 180
         P.O. Box 25843
         Overland Park, Kansas 66225
         Ph:     (913) 286-5200
         Fax:    (913) 286-5201
         Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**

16



# IN THE 5TH JUDICIAL CIRCUIT, BUCHANAN COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KATE H SCHAEFER | Case Number:  22BU-CC00511 |
| Plaintiff/Petitioner:<br>BETTY LEIVAN | Plaintiff's/Petitioner's Attorney/Address<br>KRISTI L KINGSTON<br>12920 METCALF AVENUE, STE 180<br>OVERLAND PARK, KS  66225 |
| vs. | |
| Defendant/Respondent:<br> BASF CORPORATION | Court Address:<br>BUCHANAN CO COURTHOUSE<br>411 JULES ST<br>SAINT JOSEPH, MO  64501<br>**STATUS REVIEW HEARING DATE SET** |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | **FOR 07-25-2022 IN DIVISION 1 AT 9:00AM** |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  BASF CORPORATION
Alias:

1305 S 58TH ST.
ST. JOSEPH, MO  64507

SERVE R/A:
CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTSON, MO 63105

**COURT SEAL OF**

**BUCHANAN COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| _____4/22/2022_____ | _____/S/  K. SAVAGE_____ |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with
_____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. JOSEPH), MO, on _____ (date) at _____ (time).

_____      _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                       Date                     Notary Public

SJRC (07-21) SM30 (SMCC) For Court Use Only: Document ID # 22-SMCC-223   1 of 1 (22BU-CC00511)   Civil Procedure Form No. 1, SCR 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 5:22-cv-06065-SRB   Document 1-1   Filed 06/01/22   Page 18 of 23

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* **Document ID # 22-SMCC-223**  2 of 1  (22BU-CC00511)  Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 5:22-cv-06065-SRB   Document 1-1   Filed 06/01/22   Page 19 of 23

CASE # 22BU-CC00511

Plaintiff (Petitioner)

LETVAN

vs

Defendant (Respondent)

BASF Corp.

-SRB   Document 1-1   Filed 06/0

Div. 1

Electronically Filed - Buchanan - May 04, 2022 - 10:20 AM

*Defence*



# IN THE 5TH JUDICIAL CIRCUIT, BUCHANAN COUNTY, MISSOURI

SB
5-22

| Judge or Division:<br>KATE H SCHAEFER | Case Number: 22BU-CC00511 |
|---|---|
| Plaintiff/Petitioner:<br>BETTY LEIVAN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KRISTI L KINGSTON<br>12920 METCALF AVENUE, STE 180<br>OVERLAND PARK, KS 66225 |
| Defendant/Respondent:<br>BASF CORPORATION | Court Address:<br>BUCHANAN CO COURTHOUSE<br>411 JULES ST |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | SAINT JOSEPH, MO 64501<br>**STATUS REVIEW HEARING DATE SET<br>FOR 07-25-2022 IN DIVISION 1 AT 9:00AM** (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **BASF CORPORATION**
                              **Alias:**

**1305 S 58TH ST.**
**ST. JOSEPH, MO 64507**

**SERVE R/A:**
**CT CORPORATION SYSTEM**
**120 SOUTH CENTRAL AVENUE**
**CLAYTSON, MO 63105**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*BUCHANAN COUNTY*

| 4/22/2022 | /S/ K. SAVAGE |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
☑ (for service on a corporation) delivering a copy of the summons and petition to: **LCW – D. GARCIA** (name) **INTAKE SPECIALIST** (title).
☐ other: _____

Served at **CT CORPORATION** (address)
in **St. Louis County** (County/City of St. JOSEPH), MO, on MAY - 3 2022 (date) at _____ (time).

_____ (ELSINGER)
Printed Name of Sheriff or Server                  Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
                     Date                        Notary Public

22-SMCC-3888

SJRC (07-21) SM30 (SMCC) *For Court Use Only: Document ID # 22-SMCC-223* 1 of 1 (22BU-CC00511) Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**

| | | |
|---|---|---|
| **BETTY LEIVAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 22BU-CC00511 |
| v. | ) | |
| | ) | Division: 1 |
| **BASF CORPORATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of May 2022, a copy of Plaintiff's First Set of Interrogatories to Defendant BASF Corporation and Plaintiff's First Request for production of Documents and Tangible Things to Defendant BASF Corporation and a CD containing the same in Word format were served with the Petition and Summons on the below-named Registered Agent for Defendant BASF Corporation:

CT Corporation System, 120 S. Central Avenue, Clayton, Missouri 63105.

Respectfully Submitted,

**EMPLOYEE & LABOR LAW GROUP
OF KANSAS CITY, LLC**

By:     /s/Kristi L. Kingston
Kristi L. Kingston, Mo. Bar No. 46539
12920 Metcalf Avenue, Suite 180
Overland Park, KS  66225
Ph:     (913) 286-5200
Fax:     (913) 286-5201
Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**